IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**MONTEZ ARTIS, JR.,**

    Petitioner,

vs.                                                     Civil No.  12-cv-604-DRH-CJP

**TARRY WILLIAMS,**

    Respondent.

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

In March, 2004, a jury in St. Clair County, Illinois, convicted Montez Artis, Jr., of the first degree murder of Thad Hardin. He filed a petition for habeas relief pursuant to 28 U.S.C. §2254 (Doc. 1), raising the following grounds:

1. He was denied effective assistance of counsel and his due process right to a fair trial when counsel elicited testimony from Detective Lammers that a "non-testifying codefendant" confessed to the crime, which corroborated the testimony of the State's sole witness. Additionally, counsel was ineffective in failing to object to the testimony and in failing to move for a mistrial.

2. He was denied due process, the right to present a defense and a fair trial when the trial court sustained the state's objection to his counsel's closing argument that raised an alternative theory of the crime.

## I. Relevant Facts

This summary of the facts is derived from the detailed description by the Appellate Court of Illinois, Fifth District, in its Rule 23 Order affirming petitioner's conviction on direct appeal. A copy of the Rule 23 Order is attached to Doc. 19 as Exhibit D. The state court's factual findings are presumed to be

correct unless rebutted by clear and convincing evidence, which petitioner has not done.  28 U.S.C. §2254(e).

On the night of January 24, 2003, petitioner Montez Artis, Jr., accompanied by two teenagers named Traveon Hunter and Willis Parram, drove to the home of Mary Berry, in East St. Louis, Illinois, to play dominoes.  There were a number of people at Mary Berry's house, including Ms. Berry's cousin, Danielle Hickman.  During the evening, Thad Hardin and his brother, James Hoffman, arrived at the house.  Two seemingly minor, but relevant, events occurred thereafter.  Thad Hardin asked Artis for a cigarette.  Artis gave him a cigarette, but told him not to smoke the whole thing, as it was his last one.  Hardin, however, did smoke the whole cigarette, which angered Artis.  Also, according to Traveon Hunter, Hardin offered to sell Hunter a gun.

At some point, Mary Berry sent James Hoffman and her children to McDonald's to get some food.  Before they returned, Thad Hardin left the house to walk to the liquor store.  Mary Berry testified that Hardin was intoxicated and said that he was going to buy more beer.  Berry further testified that Hoffman and her children returned shortly after Hardin left.  They ate the McDonald's food, and started a new game of dominoes.  Then, Artis left with Traveon Hunter and Willis Parram.  In contrast, Traveon Hunter testified that Hardin left a few minutes after the argument over the cigarette, and that Artis, Parram and he left a few minutes after Hardin left.  Traveon Hunter testified that the argument occurred about 11:36 p.m., and Artis, Parram and he left at 11:43 p.m.

Traveon Hunter also testified that Artis said, "I'm fixing to get this nigger." Hunter asked Artis to clarify, and Artis said that he meant the person that had offered to sell a gun to Hunter.

According to Hunter, Artis then drove to the apartment building where Artis lived with his girlfriend, Lantangela Gomiller. The two teenagers stayed in the vehicle while Artis went inside. When he came back, he had a gun in the waistband of his pants. Artis drove a few blocks, and they saw the victim, Thad Hardin, walking down the street. Artis parked and got out of the car. Hunter, who was sitting in the back seat, saw in the rearview mirror that Artis shot Hardin in the head. Hardin fell to the ground, and Artis fired four more shots at him. Hardin was still alive and was crawling on the ground. Artis came back to the car and pulled a second gun from under the seat. He gave this gun to Willis Parram and told Parram to finish Hardin off. Parram shot Hardin a few more times.[1]

Danielle Hickman and Traveon Hunter testified that Artis later threatened them and told them not to say anything to the police. Six days after the murder, Traveon Hunter went to the police station with his mother and made a statement.

Defendant's girlfriend testified that Artis came home about 11:30 p.m. on the night of the murder, and went to sleep.

Artis was convicted of first degree murder and sentenced to 50 years imprisonment.

---

[1] Willis Parram was convicted of the first degree murder of Thad Hardin in a separate trial in December, 2005. *People v. Parram*, 2013 WL 5708199 (Ill. App. 5th Dist. 2013)[Rule 23 Order affirming dismissal of postconviction petition].

## II. Appeal and Postconviction Petition

On direct appeal, Artis raised the following points:

1. He was denied effective assistance of counsel "where defense counsel elicited prejudicial inculpatory evidence . . . on cross examination that could not have been presented in the state's case in chief because it was inadmissible hearsay that would have violated Mr. Artis' right to confront the witnesses against him."

2. He was denied a fair trial when the court sustained the State's objection to his closing argument that raised an alternative theory of the crime.

3. He was denied a fair trial when the court refused to instruct the jury that the testimony of an accomplice should be viewed with suspicion.

*See* Doc. 19, Ex. A, Brief on Direct Appeal.

After his conviction was affirmed, petitioner, through counsel, filed a Petition for Leave to Appeal which raised only the first two points. Doc. 19, Ex. E. The Supreme Court denied the PLA. Doc. 19, Ex. F.

Petitioner filed a pro se postconviction petition which raised a number of issues. Doc. 19, Ex. G. Counsel was appointed to represent him. Counsel filed an amended petition. The grounds raised in the amended postconviction petition do not correspond to any of the grounds raised in the habeas petition before this Court. *See* Amended Postconviction Petition, Doc. 19, Ex. H. Further, the pro se PLA filed after the Appellate Court affirmed the dismissal of the postconviction petition raised only the following points:

1. Petitioner's speedy trial rights were violated.

2. Trial counsel was ineffective in that he failed to call witnesses on petitioner's behalf.

> 3. The Illinois felony murder statute is unconstitutional.
>
> 4. The prosecutor prejudiced the judge by informing her that petitioner had failed a polygraph test, and counsel was ineffective for failing to object to that evidence and failing to file a motion for substitution of judge.

*See* Doc. 19, Ex. N.

### III. Law Applicable to §2254 Petition

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002).

Habeas is *not* yet another round of appellate review. 28 U.S.C. §2254(d) restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases. " *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012), citing *Williams v. Taylor*, 120 S. Ct. 1495, (2000). A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle

from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." *Id.* at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id.* at 662 (internal citation omitted).

### IV. Timeliness, Exhaustion and Procedural Default

Respondent concedes that the petition was timely filed and that petitioner has exhausted state remedies. He contends that some of petitioner's grounds are procedurally defaulted.

A habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999), *see also* 28 U.S.C. §2254(c). Under the Illinois two-tiered

appeals process, petitioners such as Artis must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id.* at 843-846.

### V. Analysis

**Ground 1: Detective Lammers' Testimony**

Petitioner's first ground concerns testimony given by Detective Brian Scott Lammers on cross-examination. As set forth by the Appellate Court, the testimony was as follows:

> Q. [By defense counsel] Did you ever consider Traveon Hunter as a suspect in this case?
>
> A. At the time, no.
>
> Q. There was no point in the investigation that you considered him to be a suspect?
>
> A. No. Because when we interviewed him, we interviewed him, he voluntary [*sic*] came to the police department, and at the time that we interviewed him, he gave just about the same story as Willis Parram did.

Doc. 19, Ex. D, p. 4.

According to the trial transcript, after the above testimony, Detective Lammers continued to speak, saying, ". . . which we interviewed him just prior to interviewing Traveon, and they gave just about the same story of the incidents that happened that night when Thad Hardin was killed." *See* Transcript of Trial, Doc. 19, Ex. P, p. 469. Defense counsel then moved on to questioning Detective Lammers about his search of petitioner's apartment and car. Neither defense counsel nor the state's attorney asked any more questions of Detective Lammers

about Traveon Hunter's prior statement to the police, or about Willis Parram's statement. *See* Transcript of Trial, Doc. 19, Ex. P, pp. 469-479.

Respondent argues that two aspects of petitioner's first ground are procedurally defaulted. First, his claim that his due process right to a fair trial was violated by Detective Lammers' testimony is procedurally defaulted because petitioner did not fairly present a due process argument to the state courts for one full round of consideration. Similarly, he failed to argue in state court that counsel was ineffective in failing to move for a mistrial.

A habeas petitioner must "fairly present" the constitutional basis of his argument at each step of the state process. This requirement is not met if the state court judge must go outside the "four corners" of petitioner's pleadings to understand the nature and basis of his argument. *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006), citing *Baldwin v. Reese*, 124 S.Ct. 1237 (2004).

Fair presentment requires presenting both the operative facts and the controlling legal principles to the state courts. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). The Seventh Circuit has adopted a four-part test for fair presentment:

> In determining whether a petitioner has fairly presented a claim to the state judiciary, we examine four factors: 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Ellsworth v. Levenhagen,* 248 F.3d 634, 639, (7th Cir. 2001), citing *Verdin,* 972 F.2d at 1473-1474.

Petitioner did not fairly present his due process claim to the state courts for one full round of consideration. Due process was not explicitly invoked in connection with counsel's examination of Detective Lammers. Petitioner's state court pleadings did not cite any federal cases analyzing due process in this context, or any state cases which applied a due process analysis to similar facts. The claim was not framed in terms which would call to mind a due process claim in addition to an ineffective assistance of counsel claim. The closest petitioner came was to refer to a "fair trial." However, "bare allegations" that defendant was denied a fair trial do not constitute fair presentment of a due process claim. *Verdin*, 972 F.2d at 1475.

The claim that counsel was ineffective in failing to request a mistrial is also procedurally defaulted because it was not raised for one full round of state court review. Petitioner did raise certain aspects of counsel's performance in connection with Detective Lammers' testimony, but he never raised the failure to request a mistrial. In order to preserve a claim of ineffective assistance for habeas review, petitioner must present "the specific acts or omissions of counsel" that give rise to the claim. *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009). A habeas petitioner is required to present both the facts and the law on which he relies, and "failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default." *Stevens v. McBride*, 489

F.3d 883, 894 (7th Cir. 2007). Because Artis did not argue in state court that counsel's failure to move for a mistrial constituted ineffective assistance, the claim is procedurally defaulted and cannot be considered here.

Petitioner has not argued that there was cause for his procedural default in his petition or in his reply, Doc. 31. And, he has not raised a claim of actual innocence sufficient to overcome his procedural default. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

Artis did adequately present two aspects of counsel's performance with respect to Detective Lammers' testimony. He argued in state court that counsel was ineffective in eliciting inadmissible hearsay evidence from Detective Lammers, and in failing to object to his testimony.

A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Analysis under *Strickland* and on habeas review under §2254 are both highly deferential. Where, as here, both apply, the review is "doubly" deferential. *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

In order to show ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 104 S.Ct. at 2066-67. In order to be entitled to habeas relief, the petitioner must satisfy both prongs of the *Strickland* analysis. However, there is

no mandatory order for the analysis, and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one. *Id*. at 2069.

Under *Strickland's* performance prong, a court inquires into "the objective reasonableness of counsel's performance." *Harrington*, 131 S.Ct. at 790. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Id.* at 791. There is a strong presumption of adequate assistance and the exercise of reasonable professional judgment to avoid the temptation to second-guess counsel's assistance. *Id.* at 789. Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland,* 104 S. Ct. at 2066.

With respect to prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792. Ultimately, "[t]he focus of the *Strickland* test for prejudice … is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010).

On habeas review, the federal court assesses the decision of the last state court to rule on the merits of the claim. *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006). Here, that is the decision of the Illinois Appellate Court affirming his conviction on direct appeal. The Fifth District's Rule 23 Order is attached to Doc. 19 as Ex. D.

The state court first noted that Detective Lammers' testimony was not hearsay because he did not testify about what either Traveon Hunter or Willis Parram said in their statements to the police, and Hunter's out-of-court statement was not offered for its truth. The court further noted that defense counsel did not "elicit" the testimony in issue.

The Fifth District correctly identified *Strickland* as the applicable Supreme Court precedent regarding claims of ineffective assistance, and recognized that the *Strickland* two-pronged test requires a showing of both deficient performance by counsel and resulting prejudice. The state court also correctly recognized that petitioner must overcome the strong presumption that counsel's actions constituted sound trial strategy. Ex. D, p. 5.

The state court held that counsel's attempt to elicit testimony that Traveon Hunter had been considered a suspect in the murder was a sound trial strategy. If Hunter had been considered a suspect, he would have had a reason to lie. The court also noted that, after Detective Lammers gave his response, defense counsel moved onto a new line of questioning, and did not return to the subject of Hunter's out-of-court statement. The court concluded that counsel's tactic of

moving to another subject was more likely to draw the jury's attention away from the challenged testimony than interrupting the witness would have been.

The state court also concluded that Artis was not prejudiced because Detective Lammers' "isolated comment" could not have had much impact on the jury. The court noted that, while Traveon Hunter's credibility was a major topic of both closing arguments, neither the state nor the defense referred to Detective Lammers' comment in argument. Based upon the evidence as a whole and the closing arguments, the court concluded that Artis had not been prejudiced by the admission of Detective Lammers' statement.

This Court is mindful that "the bar for establishing the unreasonableness of a state court's application of *Strickland* 'is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *Jones v. Brown*, -- F.3d --, 2014 WL 2846420, *6 (7th Cir. 2014), citing *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). Petitioner does not come close to clearing the bar here.

Petitioner argues that Detective Lammers' statement was prejudicial because it told the jurors that "they could believe Hunter's story because Parram had confessed and . . . had told the same story, thus bolstering the credibility of Hunter's testimony." He also argues that Detective Lammers' testimony amounted to "an inadmissible inculpatory out-of-court state of a non-testifying codefendant." Doc. 1, p. 14. These arguments are belied by the trial transcript.

Artis and Parram were tried separately, and Parram's statement was not entered into evidence in Artis' trial. In petitioner's trial, Detective Lammers

testified that Willis Parram had also been charged with the murder of Thad Hardin, that Parram had given a statement to the police, and that Parram and Traveon Hunter "gave just about the same story." Ex. P, pp. 462, 469. Detective Lammers did not, however, testify that Parram had confessed to the crime, and he did not testify as to the contents of the out-of-court statements made by Hunter or Parram. Further, Detective Lammers did not testify that Hunter's in-court testimony was consistent with the statement he gave to the police.

Artis also argues that the use of Parram's confession against him violated his right to confront witnesses. Doc. 1, p. 14. Again, this argument is not supported by the record, as there was no evidence presented in Artis' trial that Parram had confessed to the murder. Obviously, Traveon Hunter testified and was cross-examined by petitioner's attorney.

Petitioner has not advanced an argument based on the record which establishes that the state court was unreasonable in its application of *Strickland*. In fact, it was not. Deciding which questions to ask a witness on cross-examination is a matter of trial strategy. *Peterson v. Douma*, 751 F.3d 524, 531 (7th Cir. 2014). The state court was reasonable in concluding that counsel's performance was a matter of trial strategy. Further, the state court's determination that Detective Lammers' "isolated comment" did not result in prejudice within the meaning of *Strickland* was not unreasonable in view of the evidence against petitioner and the absence of any reference to the testimony in closing argument. Petitioner has not demonstrated that there is a "reasonable

Page **14** of **18**

probability" that the outcome of his trial would have been different absent Detective Lammers' statement. *Strickland*, 104 S. Ct. at 2068.

**Ground 2: Closing Argument**

In closing argument, defense counsel reminded the jury that the victim was drunk and was walking alone in a dangerous area of East St. Louis at the time he was shot. He also reminded the jury that petitioner's girlfriend had given him an alibi. Counsel then began to argue an alternate theory of the crime, i.e., that, after petitioner parted from Hunter and Parram, the two teenagers decided to rob Hardin because they knew he was drunk and had some money. The state objected that the argument was based on "rank speculation" and the trial court sustained the objection. The Fifth District concluded that the court properly sustained the objection because "attorneys are limited to arguments based on inferences that are *reasonable* based on the evidence presented." Ex. D, pp. 7-8, emphasis in original.

Petitioner contends that the trial court violated his right to present a defense, to due process and to a fair trial by sustaining the state's objection. This argument presents a single claim, as the right to present a defense is grounded in the due process right to a fair trial. *Chambers v. Mississippi*, 93 S. Ct. 1038, 1045 (1973),

Petitioner has not established that the Appellate Court's decision was contrary to or an unreasonable application of federal law, as required by 28 U.S.C. §2254(d). He cites three cases, none of which are applicable. The first

case, *Herring v. New York*, 95 S.Ct. 2550, 2553-2554 (1975) holds that "total denial" of the right to make a closing argument violates the defendant's Sixth Amendment right to counsel in a bench trial as well as in a jury trial. Here, however, there was not a total denial of the right to make a closing argument. Petitioner's other two cases, *Chambers v. Mississippi*, 93 S. Ct. 1038 (1973), and *Crane v. Kentucky*, 106 S. Ct. 2142 (1986), do not concern closing argument at all.

*Herring* actually undercuts petitioner's argument. The Supreme Court recognized that the trial judge has "great latitude in controlling the duration and limiting the scope of closing summations." *Herring*, 95 S. Ct. at 2555. *Herring* recognizes that the trial judge has "broad discretion" to "ensure that argument does not stray unduly from the mark." *Id*.

The Fifth District determined that the trial court properly sustained the objection because counsel's argument was not a reasonable inference based on the evidence. The state court determined that it was not reasonable to infer that Parram and Hunter robbed Hardin from the fact that they knew Hardin was drunk and had money to buy beer. Ex. D, p. 8. This conclusion is in keeping with the Supreme Court's recognition of the trial court's broad discretion in controlling closing argument. Petitioner has not demonstrated that this was an incorrect or unreasonable application of clearly established federal law.

"It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013), citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  Here, the state court's decision does not demonstrate an application of federal law that is outside the boundaries of permissible differences of opinion.  *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).   Therefore, petitioner is not entitled to habeas relief.

**Additional Ground Raised in Reply**

For the sake of completeness, the Court notes that petitioner raised a third ground in his reply, Doc. 31, regarding the court's failure to give a jury instruction on "accomplice witness."  This ground was not raised in the habeas petition, and the Court is therefore entitled to regard it as forfeited.  *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009).

Even if this ground had been properly raised in the petition, the point is procedurally defaulted because petitioner did not raise it in the petition for leave to appeal after his conviction was affirmed on direct appeal, and the point was not raised at all in postconviction proceedings.  Doc. 19, Ex. E, G. H, N.

### VI.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).

In order for a certificate of appealability to issue, petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, no reasonable jurist would find it debatable whether this Court's rulings on procedural default or on the substantive issues were correct. Accordingly, the Court denies a certificate of appealability.

## VII.   Conclusion

Montez Artis, Jr.'s petition for habeas relief under 28 U.S.C. §2254 **(Doc. 1)** is **DENIED**. This cause of action is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 27th day of August, 2014.

Digitally signed by
David R. Herndon
Date: 2014.08.27
10:55:14 -05'00'

**Chief Judge**
**United States District Court**